Jon Dean (SBN 184972)
jdean@mwe.com
Jason Strabo (SBN 246426)
jstrabo@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3800
Los Angeles, CA  90067-3218
Telephone:   (310) 277-4110
Facsimile:    (310) 277-4730

Attorneys for Defendant
SUGARFINA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| GLOBAL APOGEE, a Wyoming Corporation, <br><br> Plaintiff, <br><br> v. <br><br> SUGARFINA, INC., a Delaware Corporation, JOSHUA REZNICK, an individual, ROSIE O'NEILL, an individual, DOES 1-10 and UNKNOWN ENTITIES 1-10, <br><br> Defendants. | CASE NO. 2:18-cv-05162-RSWL-E <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT** <br><br> DATE:      September 11, 2018 <br> TIME:      10:00 A.M. <br> CTRM:      TBD <br><br> [Courtroom of the Honorable Ronald S.W. Lew] <br><br> [Notice of Motion and Motion, Declaration of Jason D. Strabo, Request for Judicial Notice, and [Proposed] Order filed concurrently herewith] <br><br> Complaint Filed:  07/01/2016 <br> Trial Date:       TBA |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND FACTS AND THE PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT .................................................................. 4

   A.   The Long History and Use of "Candygram" in Standard Discourse ........ 4

   B.   The Asserted Mark ........................................................ 4

   C.   Global Apogee ............................................................ 5

   D.   Sugarfina ................................................................ 5

   E.   Global Apogee's Nine Causes of Action ................................... 7

III.  LEGAL STANDARD ............................................................. 7

IV.   ARGUMENT .................................................................. 8

   A.   Plaintiff Fails to State a Claim for Trademark Infringement, Which Warrants Dismissal of All of Plaintiff's Causes of Action ................ 8

      1.   Plaintiff's First and Third Through Ninth Causes of Action All Require Plaintiff to Plead Facts Sufficient to Support a Claim for Trademark Infringement ...................................... 8

      2.   Plaintiff Fails to Plead Facts Plausibly Demonstrating Likelihood of Confusion, and, in Fact, Pleads Facts Demonstrating that Consumers Would Not be Confused ............... 10

      3.   Sugarfina's Use of the Term Candygram Amounts to Classic Fair Use, Which Independently Defeats Plaintiff's Trademark-based Claims ............................................... 18

   B.   Plaintiff's Second, Third, Fifth and Eighth Claims Fail for Further Independent Reasons ...................................................... 19

      1.   Plaintiff's Second Cause of Action for Trademark Dilution Fails Because Plaintiff Fails to Plead that its Mark is Famous ..... 19

      2.   Plaintiff's Third Cause of Action for Trade Dress Infringement Does Not Identify the Trade Dress That Defendant is Alleged to Have Infringed ............................ 21

      3.   Plaintiff Fails to State Facts Sufficient to Support its Fifth Cause of Action for Violations of the UCL .......................... 22

      4.   Plaintiff Fails to State Facts Sufficient to Support its Eighth Cause of Action for Tortious Interference with Prospective Business Relationship ............................................... 24

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

V.      CONCLUSION ................................................................................................ 25

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Academy of Motion Picture Arts & Scis. v. Creative House Promotions,
Inc.*,

5

944 F.2d 1446 (9th Cir.1991) ............................................................... 9

6

*Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*,

616 F.2d 440 (9th Cir. 1980) .............................................................. 14

7

*AMF Inc. v. Sleekcraft Boats*,

8

599 F.2d 341 (9th Cir. 1979) .......................................................*passim*

9

*Applied Info. Scis. Corp. v. eBay, Inc.*,

511 F.3d 966 (9th Cir. 2007) .............................................................. 10

10

*Arcsoft, Inc. v. Cyberlink Corp.*,

11

153 F. Supp. 3d 1057 (N.D. Cal. 2015) ..........................................20, 21

12

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009) ........................................................................8, 15

13

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*,

14

No. 08–cv–04397–WHA, 2008 WL 6742224 (N.D. Cal. Dec. 18,
2008) ...................................................................................................22

15

*Avery Dennison Corp. v. Sumpton*,

16

189 F.3d 868 (9th Cir. 1999) .............................................................. 20

17

*Balistreri v. Pacifica Police Dep't*,

901 F.2d 696 (9th Cir. 1988) ................................................................ 7

18

*Bell Atl. Corp. v. Twombly*,

19

550 U.S. 544 (2007) ............................................................................. 8

20

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,

174 F.3d 1036 (9th Cir. 1999) ............................................................ 17

21

*Bryant v. Matvieshen*,

22

904 F. Supp. 2d 1034 (E.D. Cal. 2012) .............................................. 21

23

*Cairns v. Franklin Mint*,

292 F.3d 1139 (9th Cir. 2002) ........................................................18, 19

24

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*,

25

20 Cal. 4th 163 (1999) ....................................................................22, 23

26

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,

16 F.Supp.3d 1141 (S.D. Cal. 2014) ................................................... 23

27

*Chance v. Pac–Tel Teletrac, Inc.*,

28

242 F.3d 1151 (9th Cir. 2001) .............................................................. 9

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

*Cleary v. News Corp.*,
  30 F.3d 1255 (9th Cir.1994) ............................................................. 9

*Coach Servs., Inc. v. Triumph Learning LLC*,
  668 F.3d 1356 (Fed. Cir. 2012) ...................................................... 20

*Color Me Mine Enters. Inc. v. S. States Mktg. Inc.*,
  No. CV 12-00860-RGK(JCx), 2012 WL 12887744 (C.D. Cal. May
  18, 2012) ......................................................................................... 20

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
  11 Cal. 4th 376 (1995) ...................................................................... 9

*Dr. Seuss Enters. v. Penguin Books USA, Inc.*,
  109 F.3d 1394 (9th Cir. 1997) ......................................................... 11

*Dumas v. Diageo PLC*,
  2016 WL 1367511 (S.D. Cal. Apr. 6, 2016) ..................................... 24

*Duncan Kitchen Grips, Inc. v. Boston Warehouse Trading Corp.*,
  2011 WL 13199150 (C.D. Cal. 2011) ............................................... 17

*Everest Capital Ltd. v. Everest Funds Mgmt.*,
  393 F.3d 755 (8th Cir. 2005) ........................................................... 20

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
  925 F.Supp.2d 1067 (C.D. Cal. 2012) ............................................. 18

*Forty Niner Truck Plaza, Inc. v. Shank*,
  No. Civ. S-11-860 FCD, 2011 WL 4386299 (E.D. Cal. Sept. 20,
  2011) ................................................................................................ 24

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir.1995) .............................................................. 23

*Goldman v. Bayer AG*,
  No. 17-CV-0647-PJH, 2017 WL 3168525 (N.D. Cal. July 26, 2017) .................. 10

*Grey v. Campbell Soup Co.*,
  650 F.Supp. 1166 (C.D. Cal. 1986) ................................................... 9

*Infostream Group Inc. v. Avid Life Media Inc.*,
  No. CV 12–09315 DDP, 2013 WL 6018030 (C.D. Cal. Nov. 12,
  2013) ..................................................................................... 11, 12, 16

*Inline, Inc. v. Apace Moving Systems, Inc.*,
  125 Cal. App. 4th 895 (2005) .......................................................... 24

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ................................................................... 24

*Makaeff v. Trump Univ., LLC*,
  715 F.3d 254 (9th Cir. 2013) ............................................................. 7

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*Mattel, Inc. v. Walking Mountain Productions*,
  353 F.3d 792 (9th Cir. 2003) ........................................................................ 18

*Multi Time Machine, Inc. v. Amazon, Inc.*,
  804 F.3d 930 (9th Cir. 2015) ..................................................................... 2, 11

*Murray v. Cable Nat'l Broad. Co.*,
  86 F.3d 858 (9th Cir. 1996) .......................................................................... 11

*Natural Alternatives Int'l, Inc. v. Allmax Nutrition, Inc.*,
  258 F.Supp.3d 1170 (S.D. Cal. 2017) ............................................................ 11

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011) ...................................................................... 16

*Nutri/System, Inc. v. Con–Stan Industries, Inc.*,
  809 F.2d 601 (9th Cir. 1987) ........................................................................ 14

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
  469 U.S. 189 (1985).................................................................................... 10

*People's Choice Wireless, Inc. v. Verizon Wireless*,
  131 Cal. App. 4th 656 (2005) ....................................................................... 23

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
  354 F.3d 1020 (9th Cir. 2004) ...................................................................... 16

*Playmakers, LLC v. ESPN, Inc.*,
  297 F.Supp.2d 1277 (W.D. Wash. 2003) ....................................................... 15

*Parts.com, LLC v. Yahoo! Inc.*,
  996 F. Supp. 2d 933 (S.D. Cal. 2013) ........................................................... 21

*Roth v. Rhodes*,
  25 Cal. App. 4th 530 (1994) ......................................................................... 25

*S&B Filters Inc. v. R2C Performance Prods., LLC*,
  2016 WL 8928314 (Aug. 18, 2016) ............................................................... 17

*Simpson v. The Kroger Corp.*,
  219 Cal. App. 4th 1352 (2013) ..................................................................... 23

*Sleep Sci. Partners v. Lieberman*,
  No. 09–cv–04200–CW, 2010 WL 1881770 (N.D. Cal. May 10, 2010) ................ 22

*Surfvivor Media, Inc. v. Survivor Prods.*,
  406 F.3d 625 (9th Cir. 2002) .................................................................. 13, 18

*Theta Chi Fraternity, Inc. v. Leland Stanford Junior University*,
  212 F. Supp. 3d 816 (N.D. Cal. 2016).......................................................... 19

*Toyota Motor Sales v. Tabari*,
  610 F.3d 1171 (9th Cir. 2010) ...................................................................... 11

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ............................................................ 8

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
    No. 14–cv–04050–MEJ, 2014 WL 6788310 (N.D. Cal. Dec. 2, 2014) ................. 20

*Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
    No. 12 Civ. 3599, 2013 WL 866867 (S.D.N.Y. Mar. 8, 2013) ...................... 21

*Warren v. Fox Family Worldwide, Inc.*,
    328 F. 3d 1136 (9th Cir. 2003) ........................................................ 8

**Statutes and Rules**

15 U.S.C. § 1114 ........................................................................... 7, 8

15 U.S.C. § 1114(1) ........................................................................... 9

15 U.S.C. § 1115(b)(4) ...................................................................... 19

15 U.S.C. § 1125(a) ..................................................................... 7, 8, 9

15 U.S.C. § 1125(c) ........................................................................... 7

Cal. Civ. Proc. Code § 17200 ...........................................................*passim*

Federal Rule of Civil Procedure 12(b)(6) ............................................... 7, 8

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

# I.    **INTRODUCTION**

The Complaint in this action suggests that the use of the well-known phrase "candygram," by candymakers across the country, amounts to trademark infringement. Plaintiff Global Apogee, a Wyoming company that operates "1-800 candygram" and www.candygram.com, asserts that luxury candy boutique Sugarfina, Inc. ("Sugarfina"), a Delaware corporation, violated Plaintiff's registered mark "CANDY-GRAM" by offering a Sugarfina candygram program to its customers.  This is tantamount to arguing that the public would confuse Sugarfina's products with the Plaintiff's products simply by Sugarfina's use of the phrase candygram in describing a means of delivery of its various luxury products.  Neither the law nor the facts pled in the Complaint support such a far-fetched and over-reaching conclusion.  The Complaint fails to state a claim for trademark infringement for two reasons:  (1) no allegations support the core element of likelihood of confusion and, indeed, the Complaint actually pleads facts demonstrating no plausible public confusion; and (2) Sugarfina's use of the widely used phrase candygram, in describing the delivery of its candy products, amounts to classic fair use.  Since the other causes of action in the Complaint are largely, if not entirely, based on trademark infringement, the Complaint should be dismissed in its entirety.[1]

As to likelihood of confusion, Plaintiff's Complaint pleads virtually no facts regarding, for example, the products Plaintiff sells, through what channels, to what locations, the appearance of its website or packaging, the form or shape of its use of the mark "CANDY-GRAM" or, indeed, much else beyond the fact that Plaintiff simply holds the registration for the claimed mark.[2]  Accordingly, the Complaint fails

---

[1] Plaintiff asserts a variety of trademark, unfair competition and trade dress related claims, but the gravamen of the entire complaint is clearly trademark infringement. Nevertheless, there are additional and independent reasons why the other causes of action in the Complaint also fail.

[2] In effect, Plaintiff's Complaint presumes that the existence of a mark is tantamount to liability.  Plaintiff pleads facts regarding the existence of a mark, but little else in support of its claims.   The existence of a mark and likelihood of confusion are, of course, different requisite elements for a trademark infringement action.  Indeed, they

to plead facts in support of the most important element of a trademark infringement claim—likelihood of confusion as to the source of the defendant's products with the plaintiff's.  Moreover, the facts that are pled in the Complaint actually support the conclusion that a consumer would not be confused into believing that they were purchasing a "CANDY-GRAM" from Global Apogee when it purchased candies through the Sugarfina candygram program.  In fact, while strikingly silent on the content, nature or appearance of its own products, Global Apogee's Complaint is replete with samples of Sugarfina's website offering and its labeling, which make clear that Sugarfina is delivering its own boutique candy products as a part of a message with candy delivery program.  The Sugarfina excerpts referenced in the Complaint make clear that Sugarfina' packaging is in a uniform and distinctive font, interspersed with a distinctive light blue color scheme, and its candygram product offerings disclaim any other origin other than Sugarfina, repeatedly referring to "CandyGram *by Sugarfina*."  Moreover, the Complaint makes clear that Sugarfina is a "luxury candy boutique," with physical stores, that sells distinctive products in, for example, trademarked candy Bento Boxes®.  There is no indication in the Complaint that Global Apogee sells any such similar products.  The Complaint offers no facts to explain how Sugarfina's mere use of the term "CandyGram," with the product origin placed immediately next to that term, couched among a specific and distinctive design scheme, could lead a consumer to believe they were in fact obtaining products from another origin, namely the Plaintiff.

Moreover, Sugarfina's use of the generic term "candygram" clearly describes the program, not a candy or candies, and therefore amounts to fair use.  Here,

---

involve separate inquiries, and multiple courts have repeatedly held that proof of likelihood of confusion is by far the more important of the two elements.  *See, e.g. Multi Time Machine, Inc. v. Amazon, Inc.*, 804 F.3d 930, 933 (9th Cir. 2015).  That element has not been satisfied here, as Plaintiff has pleaded virtually no facts regarding their own business and therefore has not pled any facts in support of the assertion that the public would confuse Sugarfina's candygram program with Plaintiff's business.  (*See* Compl., *passim.*)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    candygram is a phrase that has at best, two separate meanings, one that arguably

2    (although the Complaint pleads little in this regard) refers to Plaintiff's product

3    specifically, and another that refers more generally to the delivery of candy

4    accompanied by a message.  Here, Sugarfina's usage is clearly made to refer to a

5    method for delivery of its own products, as illustrated by the fact that, for example, its

6    usage is consistently embedded with an email symbol between the phrase

7    "candygram":




13   (*See* Compl. at 9, 11, 13, 14.)  On the face of the Complaint, Sugarfina's usage clearly

14   describes an email and delivery program for its own Sugarfina candies.  (*Id.*)

15   Sugarfina's use of the term "candygram" amounts to classic fair use and Plaintiff

16   pleads no facts suggesting any contrary meaning of the phrase "CandyGram by

17   Sugarfina" that would establish a prima facie case of trademark infringement.

18         Finally, in addition to the above issues, which apply to all causes of action,

19   Plaintiff's Second, Third, Fifth and Eighth Causes of Action fail as a matter of law for

20   further and independent reasons.  Plaintiff's Second Cause of Action for trademark

21   dilution fails because Plaintiff has not pled sufficient facts to meet the "rigorous" and

22   "demanding" requirements for pleading that its mark is "famous."  Plaintiff's Third

23   Cause of Action for trade dress infringement fails because Plaintiff has not identified

24   any trade dress, much less described it in sufficient detail to satisfy the applicable

25   pleading standards.  Plaintiff's Fifth Cause of Action for violation of California's

26   Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL") fails

27   because Plaintiff has not alleged "unfair" conduct, as that term is defined with respect

28   to claims by alleged competitors, fails to allege "fraudulent" conduct, and

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   inappropriately seeks damages, rather than restitutionary relief.  Finally, Plaintiff's

2   Eighth Cause of Action for intentional interference with prospective business

3   relationship fails because Plaintiff has not identified an existing relationship with

4   which Sugarfina's conduct allegedly interfered.

5       For these reasons, and the reasons discussed more fully below, the Court should

6   dismiss the Complaint in its entirety.

7   ## II.  BACKGROUND FACTS AND THE PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT

8   ### A.  The Long History and Use of "Candygram" in Standard Discourse

9       Since at least the 1970s, and likely far longer, the term "CANDYGRAM" has

10  been used non-exclusively in common discourse, in pop culture, and throughout

11  American society to generally refer to the delivery of messages accompanied by

12  sweets.  In 1974, the term was included in a well-known comedic line, "Candygram

13  for Mongo," in the classic Mel Brooks comedy film "Blazing Saddles"; and, in 1975,

14  the term "candygram" was referenced several times in core lines from the well-known

15  Saturday Night Live skit "Landshark."  (Request for Judicial Notice ("RJN") at ¶ 2.)

16  Publicly-available articles extending back to at least the 1980s demonstrate

17  widespread use the term "candygram" in high schools and other organizations

18  throughout the country to reference the delivery of sweets together with a message to

19  the recipient.  (*Id.* at ¶ 3; Strabo Decl., Ex. B.)  Numerous articles throughout the

20  1990s, 2000s, and 2010s discuss the use of "candygram" programs in schools as part

21  of Valentine's Day celebrations, and for Mother's Day, among others.  (*Id.*)

22  "Candygram" is now a defined term in Collins' Dictionary, which defines the term as

23  including any "message accompanied by sweets."  (RJN ¶ 4; Strabo Decl., Ex. C.)

24  ### B.  The Asserted Mark

25      Plaintiff Global Apogee is a Wyoming-based corporation.  (Compl. ¶ 8.)  Since

26  2010, Global Apogee has held the registered "CANDY-GRAM" trademark.  (*Id.* ¶

27  16.)  The "CANDY-GRAM" mark was originally registered on December 26, 1995 by

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Arnold Sillins.  (*Id.*)  The "CANDY-GRAM" mark was assigned by Mr. Sillins to New Floral in 1997, by New Floral to United Federal Carriers in 2000, and by United Federal Carriers to Global Apogee of Nevada in 2010.  (*Id.*)  Plaintiff asserts that "the CANDY-GRAM trademark has been in continual use in interstate commerce in connection with the sales of candy and greeting cards since the registration was issued in 1995."  (*Id.* ¶ 17.)

### C.    Global Apogee

Plaintiff asserts that "[i]n addition to the www.candygram.com website, Global Apogee uses the CANDY-GRAM trade name in its 800-candygram toll free number." (*Id.* ¶ 18.)  Plaintiff then goes on to conclusorily assert that the "CANDY-GRAM" mark is "famous and distinctive."  (*Id.* ¶¶ 51, 53.)  This is the sum total of Plaintiff's allegations regarding its business.  Plaintiff pleads no facts, for example, regarding where it sells its products, to whom, or in what quantities, for what prices, or whether the products fall within a luxury, bargain, or other category altogether.  (*Id.*, *passim.*) Plaintiff's Complaint also provides no descriptions or images of its products or packaging, its marketing or advertising, and no description or image of its website, or the interface for its telephone system.  (*Id.*)  In fact, there are no descriptions or details pleaded at all regarding Plaintiff's products, business or marketing from which to assess whether there is even a plausible argument that a reasonable consumer might somehow confuse Global Apogee with Sugarfina.  (*Id.*)

### D.    Sugarfina

The Complaint states that Defendant Sugarfina is a Los Angeles-based "luxury candy boutique" that is incorporated in Delaware.  (*Id.* ¶ 24.)  Sugarfina sells its products over the internet and in brick-and-mortar stores.  (*Id.* ¶ 24-27.)  Sugarfina sells its candies, among other packaging, in a distinctive, trademarked "Bento Box®." (*Id.* ¶ 26.)  Given its status as a "luxury candy boutique," Sugarfina's products retail at high price points.  As the images in the Complaint indicate, for example, an 8 piece Sugarfina Bento Box® sells for $72.95, and a 4 piece candy Bento Box® sells for

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

$41.95.  (*Id.* ¶ 27.)  Both in the store and on the internet, Sugarfina utilizes a consistent and distinctive light blue color motif, and employs similar recognizable fonts.  (*Id.* ¶ 18-28.)

At issue here is Sugarfina's "CandyGram by Sugarfina" program.  Sugarfina offers customers the opportunity to send Sugarfina products as gifts to third parties using a service that, on its face, indicates that customers would be sending Candy Grams containing Sugarfina products, rather than those of a third party:

 

 

(Compl. at 9, 11, 13, 14.)  The link to the Sugarfina CandyGram transmission option itself is situated as but one of many among a series of generally described and functional options on the Sugarfina website, including the "Gift Shop," "Candy Shop," and Sugarfina's "Blog."  (Compl. ¶ 25.)  The Complaint illustrates this fact as follows:



(Compl. at 9.)

Plaintiff also asserts that Sugarfina has manipulated "Search Engine Optimization to feature the CANDY-GRAM trade name" causing it to gain a top position with Google in searches for "candygram."  (*Id.* ¶ 24.)  The Complaint states

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

that a Google search of the word "candygram" results in the following:

CandyGram | A Luxury Candy Boutique - Sugarfina
*https://www.sugarfina.com/candygram*

(*Id.* ¶ 24.)  Plaintiff offers no images of the complete Google search results, no description of the surrounding material, nor any other details regarding the alleged results from which to assess a plausible claim of likelihood of confusion.

### E.    Global Apogee's Nine Causes of Action

Based upon the foregoing, Global Apogee asserts nine separate causes of action: (1) federal trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Compl. ¶¶ 35-48); (2) federal trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) (*id.* ¶¶ 49-60); (3) unfair competition, trade dress infringement, and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (*id.* ¶¶ 61-69); (4) California common law unfair competition (*id.* ¶¶ 70-84); (5) unfair competition in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. (*id.* ¶¶ 85-90); (6) common law infringement of trademark (*id.* ¶¶ 91-101), and (7) common law infringement of service mark (*id.* ¶¶ 102-112); (8) tortious interference with prospective business advantage (*id.* ¶¶ 113-124); and (9) unjust enrichment (*id.* ¶¶ 125-130).  For the reasons set forth below, these claims should be dismissed.

### III.    LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 274 (9th Cir. 2013).  A party may move under Rule 12(b)(6) for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Dismissal can be based upon a lack of cognizable legal theory or lack of sufficient facts alleged under a legal theory.  *Id.*  In evaluating a 12(b)(6) motion, the court may consider allegations that appear on the face of the complaint, documents attached to

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

the complaint, and matters that are properly the subject of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough facts regarding all material elements of a viable legal theory to state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "requires a 'showing,' rather than a blanket assertion of entitlement to relief." *Id.* at 555 n. 3 (internal citations omitted). If plaintiffs fail to "nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570. In undertaking this task, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, the Court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F. 3d 1136, 1139 (9th Cir. 2003). The Complaint does not meet this standard.

## IV. ARGUMENT

### A. Plaintiff Fails to State a Claim for Trademark Infringement, Which Warrants Dismissal of All of Plaintiff's Causes of Action

#### 1. Plaintiff's First and Third Through Ninth Causes of Action All Require Plaintiff to Plead Facts Sufficient to Support a Claim for Trademark Infringement

Plaintiff's first cause of action is for federal trademark infringement, but the third through ninth claims of the Complaint are based on, or require, Plaintiff's proof of the first claim. Hence, the overwhelming majority of the Complaint, in essence, rises and falls on its trademark claim.

Plaintiff's First, Third, Fourth, Sixth and Seventh Causes of Action are for: (1) federal trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114 (First Cause of Action), (2) unfair competition, trade dress infringement, and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Third Cause of Action), (3) California common law unfair competition

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1  (Fourth Cause of Action), (4) common law infringement of trademark (Sixth Cause of

2  Action), and (5) common law infringement of service mark (Seventh Cause of

3  Action).  (Compl. ¶¶ 35-84, 91-112.)

4        The tests for these claims for "infringement of a federally registered mark under

5  § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair

6  competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition

7  involving trademarks are the same." *Grey v. Campbell Soup Co.*, 650 F. Supp. 1166,

8  1173 (C.D. Cal. 1986); *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.1994)

9  (*citing Academy of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*,

10  944 F.2d 1446, 1457 (9th Cir.1991) (noting that the Ninth Circuit "has consistently

11  held that state common law claims of unfair competition ... are 'substantially

12  congruent' to claims made under the Lanham Act"); *Chance v. Pac–Tel Teletrac, Inc.*,

13  242 F.3d 1151, 1156 (9th Cir. 2001) ("the only difference between a trademark and a

14  service mark is that a trademark identifies goods while a service mark identifies

15  services.")  Thus, Plaintiff's First, Third, Fourth, Sixth and Seventh Causes of Action

16  are subject to substantially the same test for infringement.

17        In addition, Plaintiff's Fifth, Eighth, and Ninth Causes of Action are,

18  respectively, for (1) unfair competition, pursuant to California's Unfair Competition

19  Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL") (Fifth Cause of Action)

20  (Compl. ¶¶ 85-90), (2) tortious interference with prospective business relationship

21  (Eighth Cause of Action) (*id.* ¶¶ 113-124), and (3) unjust enrichment (Ninth Cause of

22  Action) (*id.* ¶¶ 125-130.)  To state a claim for prospective interference, Plaintiff must

23  allege an act or conduct that is wrongful by some measure beyond the fact of the

24  interference itself.  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376,

25  390-91 (1995).  Likewise, to prevail on its Eighth Cause of Action for violations of the

26  UCL, Plaintiff must demonstrate that Sugarfina's conduct is "unfair, unlawful, or

27  misleading."  *See* Cal. Civ. Proc. Code § 17200.  Here, the only acts alleged by

28  Plaintiff as support for their intentional interference claims are the same alleged acts

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

of statutory and common law infringement stated in Plaintiff's First through Fourth, Sixth and Seventh Causes Causes of Action.  (Compl. ¶¶ 113-124.)  Similarly, the allegedly "unlawful" acts identified by Plaintiff in the Complaint are largely Sugarfina's alleged acts of trademark infringement.  (*Id.* ¶¶ 85-90.)  Thus, to the extent that Plaintiff fails to plausibly allege the requirements of trademark infringement, its UCL (Fifth Cause of Action) (to the extent based on "unlawful conduct")[3] and intentional interference (Eighth Cause of Action) claims must fail as well.  Finally, because the unjust enrichment cause of action (Ninth Cause of Action) is based on the same alleged acts of wrongdoing as the trademark and UCL causes of action, it should be dismissed as well for the reasons stated above.  *See, e.g., Goldman v. Bayer AG*, No. 17-CV-0647-PJH, 2017 WL 3168525, at *8–9 (N.D. Cal. July 26, 2017) (holding that where a claim for unjust enrichment was premised on the same allegations as a failed UCL claim, the claim for unjust enrichment must be dismissed as well).

### 2.   Plaintiff Fails to Plead Facts Plausibly Demonstrating Likelihood of Confusion, and, in Fact, Pleads Facts Demonstrating that Consumers Would Not be Confused

"The Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985).  To sustain a claim for trademark infringement, Plaintiff must show (1) that it has valid trademark rights; and (2) that Defendant's use of a similar mark is likely to cause confusion.  *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).  These are separate elements — the mere fact that a plaintiff has a registered mark is not enough to prevail without establishing a likelihood of confusion.  *See id.*

---

[3] As discussed in Section IV.B.3 below, Plaintiff's UCL claims also fail under the "unfair" and "fraudulent" prongs of the UCL.  Plaintiff's UCL claim therefore fails under any theory.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

Indeed, "[t]he core element of trademark infringement is the likelihood of confusion, *i.e.,* whether the similarity of the marks is likely to confuse customers *about the source of the products*." *Multi Time Machine*, 804 F.3d at 933 (9th Cir. 2015) (emphasis added). "Courts may determine likelihood of confusion as a matter of law on either a motion to dismiss or summary judgment." *Infostream Group Inc. v. Avid Life Media Inc.*, No. CV 12–09315 DDP (AJWx), 2013 WL 6018030, *3 (C.D. Cal. Nov. 12, 2013) (*citing Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 859 (9th Cir. 1996)); *see also Natural Alternatives Int'l, Inc. v. Allmax Nutrition, Inc.*, 258 F.Supp.3d 1170, 1179 (S.D. Cal. 2017) (granting defendants' motion to dismiss where plaintiff failed to sufficiently allege likelihood of confusion as to source of products). Courts look to the following factors, known as the *Sleekcraft* factors, for guidance in determining the likelihood of confusion: (1) strength of Plaintiff's mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and the (8) likelihood of expansion of the product lines. *Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 (9th Cir. 1997) (*citing AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).

In addition, where an infringement claim is based on the use of a trademarked keyword, the Ninth Circuit has recognized that internet consumers "fully expect to find some sites that aren't what they imagine based on a glance at the domain name or search engine summary. Outside the special case of … domains that actively claim affiliation with the trademark holder, consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page— if then." *Toyota Motor Sales v. Tabari*, 610 F.3d 1171, 1179 (9th Cir. 2010). Given these expectations, to adequately plead likelihood of confusion based on the use of trademarked keywords, a plaintiff must allege sufficient facts regarding the "placement, appearance and context of Defendant's advertisements" to show a

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

likelihood of confusion.  *Infostream Group*, 2013 WL 6018030, at *5.

Here, while Plaintiff's Complaint includes allegations regarding the first element — the existence of a registered trademark (*See*, *e.g.*, Compl. ¶¶ 2, 15-19) — it is virtually devoid of allegations from which to satisfy the second requirement, a likelihood of confusion.  Indeed, what allegations exist in the Complaint serve largely to undercut suggestions that there is a plausible claim of likelihood of confusion.  Specifically, the following is a comparison of the allegations regarding the parties' respective product offerings and marketing:

| Characteristics | Sugarfina | Global Apogee |
|---|---|---|
| Market Segment | Sugarfina is a "luxury candy boutique."  (*Id.* ¶ 24.) | No allegations, images or descriptions |
| Price Point | Sugarfina candies sell at a premium price point.  (*Id.* ¶ 27.) | No allegations, images or descriptions |
| Products | Sugarfina sells its candy in distinctive "Bento Boxes®" (*Id.* at 9-10.) | No allegations, images or descriptions |
| Color Scheme | Sugarfina references to "CandyGram" are in, or surrounded by, a distinctive light blue motif.  (Compl. at 9, 11, 13, 14.) | No allegations, images or descriptions. |
| Location of Term | Sugarfina uses the term among a menu of functional terms, such as "Blog," "Candy Shop," or "Gift Shop," denoting services. | No allegations, images or descriptions. |

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

| | (*Id.* at 8-9.) | |
|---|---|---|
| Keyword Results | Sugarfina is the first result; search yields a result that identifies its origin with Sugarfina.  (*Id.* ¶ 24.) | No allegations, images or descriptions of references to Candygram; and no allegations, images or descriptions of the remainder of the keyword search results. |

Because it cannot, Global Apogee pleads no facts regarding how the above-described distinctive features of Sugarfina's product offerings and marketing could plausibly result in consumer confusion regarding the Plaintiff.

A factor-by-factor analysis of the *Sleekcraft* factors only serves to confirm this:

### a.    Strength of the Mark

The first *Sleekcraft* factor is the strength of the mark.  "The purpose of examining the strength of the plaintiff's mark is to determine the scope of trademark protection to which the mark is entitled."  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2002).  "The more unique the mark, the greater the degree of protection."  *See id.*[4]  "Generic" marks, for example, are not entitled to trademark protection.  *See id.* at 631-32.

Here, "candygram" has come to refer, in the popular lexicon, to any

---

[4] Trademarks are divided into five categories.  The two strongest sets of marks are "arbitrary" and "fanciful" marks, which trigger the highest degree of trademark protection.  *See id.* at 631-32.  "Fanciful" marks consist of "coined phrases" that also have no commonly known connection with the product at hand.  *See id.*[4] "Suggestive" marks do not describe the product's features but suggest them.  *Id.* at 632.  The exercise of some imagination is required to associate a suggestive mark with the product.  *Id.*[4]  The fourth category of marks is referred to as "descriptive."  *Id.* These marks define a particular characteristic of the product in a way that does not require any exercise of the imagination.  *Id.*  Because these marks merely describe a characteristic of the product, they do not receive any trademark protection unless they acquire sufficient "secondary meaning" to create an association between the mark and the product.  *Id.*  The final category of marks consists of "generic" marks, which are not entitled to trademark protection.  *See id.*

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   transmission of candy accompanied by a method.  (*See* Section II.A., supra.)  This

2   mark is, Plaintiff's conclusory and self-serving contentions of law aside, therefore

3   entitled to little or no protection.  Indeed, beyond mere generalized assertions,

4   Plaintiff makes no allegations in the Complaint regarding the purported strength of its

5   mark.  Instead, the evidence in Sugarfina's judicial notice, discussed in Section II,

6   *supra*, indicates that the term is generic.  The first *Sleekcraft* factor, strength of the

7   mark, therefore heavily if not entirely weighs against Plaintiff.

8                     *b.*     *Proximity or Relatedness of the Goods*

9           The second *Sleekcraft* factor is the proximity or relatedness of the goods.

10   Goods are proximate or related if they "are similar in use and function," and "would

11   be reasonably thought by the buying public to come from the same source if sold

12   under the same mark.'" *Sleekcraft*, 599 F.2d at 348 n.10, 350 (citation omitted)).

13   Here, if anything, what evidence appears on the face of the Complaint in fact

14   demonstrates that consumers would not think that candy purchased through the

15   Sugarfina candygram program were likely sourced from Global Apogee.  The images

16   included within Plaintiff's Complaint repeatedly make clear that what Sugarfina is

17   selling is a "CandyGram by Sugarfina," thus expressly disavowing any other source.

18   (Compl. at 9, 11, 12, 13.)  Moreover, the Complaint indicates that Sugarfina is a

19   "luxury candy boutique," and that Sugarfina sells its products at a premium price

20   point, but provides no indication that Global Apogee sells to the luxury market.  (*Id.* ¶

21   24.)  Hence, the Complaint offers no plausible basis upon which to conclude that the

22   consuming public would likely be confused as to the origin and source of Sugarfina

23   candy products that would accompany the message due to any claimed relatedness of

24   the competing products.  The second *Sleekcraft* factor, proximity or relatedness of the

25   goods, obviously weighs against Plaintiff.

26                     *c.*     *Similarity of the Marks*

27           The third *Sleekcraft* factor is similarity of the marks.  "[D]etermination of

28   'similarity' involves consideration of 'the marks and names in their entirety and as

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

they appear in the marketplace.'" *Nutri/System, Inc. v. Con–Stan Industries, Inc.*, 809 F.2d 601, 605–06 (9th Cir. 1987) (*quoting Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir. 1980)); *Playmakers, LLC v. ESPN, Inc.*, 297 F.Supp.2d 1277, 1283 (W.D. Wash. 2003) (in determining similarity, "what is critical is the overall appearance of the mark as used in the marketplace, not a deconstructionist view of the different components of the mark"), *aff'd* 376 F.3d 894 (9th Cir. 2004).

Here, however, Plaintiff's Complaint, which is devoid of any images, descriptions or examples of its use of the mark in practice, has pleaded no information whatsoever from which to evaluate its mark "as it appears in the marketplace." Moreover, to the extent that Plaintiff has offered information about Sugarfina's use of the word "CandyGram," its assertions rest on an inappropriate "deconstructionist view" of the phrase. Namely, Plaintiff's Complaint consistently divorces the word candygram from the fact that, as the Complaint itself illustrates, it is nearly universally followed in use by Sugarfina by the words "*by Sugarfina*," and that its marketing of the CandyGram program is couched in a unique and distinct font and color scheme. (Compl. at 9, 11, 12, 13.) Hence, there is no basis to conclude that there is any similar marks or similar usage by Sugarfina of Plaintiff's mark that would plausibly cause consumer confusion. The third *Sleekcraft* factor, similarity of the marks, therefore weighs entirely against Plaintiff.

       d.    *Evidence of Actual Confusion*

The fourth *Sleekcraft* factor is evidence of actual confusion. *Sleekcraft*, 599 F.2d at 348-49. Here, Plaintiff merely generally suggests, as part of a formulaic recitation on an ancillary cause of action for "unjust enrichment," that there must be consumer confusion. (Compl. ¶ at 9, 11, 12, 13.) Mere conclusory statements, without more, are insufficient. *Iqbal*, 556 U.S. at 678. Plaintiff therefore states no allegations with regard to the *Sleekcraft* factor of actual confusion.

       e.    *Marketing Channels Used*

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

The fifth *Sleekcraft* factor relates to the marketing channels that are used by the respective parties and whether there is any relevant overlap.  "Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353.  In *Sleekcraft*, the two products at issue were sold in niche marketplaces, including boat shows, specialty retail outlets, and trade magazines.  *Id.* at 353.  This factor becomes less important, however, when the marketing channel is less obscure.  *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011).  "Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion."  *Id.* (*citing Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) ("Given the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight.").  Thus, the Ninth Circuit has held that a court's "determination that because both parties advertise on the Internet this factor weigh[s] in favor of [the Plaintiff] [is] incorrect."  *Id.*  Here, the only overlapping marketing channel identified in the Complaint is the internet; therefore, the facts alleged by Plaintiff as to this factor carry little or no weight.  Although plaintiff includes limited and carefully curated excerpts of limited portions of the search engine results yielded through such channel, Plaintiff includes no further information regarding the location or context of the yielded result, from which to assess whether there is an actual likelihood of confusion. *See Infostream Group*, 2013 WL 6018030, at *5.

Moreover, Plaintiff pleads that Sugarfina sells its luxury candy products in physical stores, yet pleads no facts indicating that Plaintiff sells products through this entirely separate channel.  (Compl. at 11.)  Accordingly, the Complaint is wholly deficient as to this *Sleekcraft* factor.

### f.   Degree of Care Exercised By Consumers

The sixth *Sleekcraft* factor is the degree of care that would be exercised by consumers.  Given the luxury candy products admittedly sold by Sugarfina, the

Complaint concedes that the consumers at issue in this case are in fact not "easily confused." "What is expected of this reasonably prudent consumer depends on the circumstances. We expect him to be more discerning – and less easily confused – when he is purchasing expensive items." *Brookfield Communications*, *Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999). By contrast, "[w]hen dealing with inexpensive products, consumers are likely to exercise less care, thus making confusion more likely." *S&B Filters Inc. v. R2C Performance Prods., LLC*, 2016 WL 8928314, at *11 (Aug. 18, 2016). Here, the only facts pled regarding the nature of the consumers at issue are in reference to Sugarfina as a "luxury candy boutique." (Compl. ¶¶ 24-25.) Thus, it should be assumed that the consumers at issue in this case would exercise a high degree of care. *See Discovery Communications, Inc.*, 172 F. Supp. 2d at 1290. Accordingly, the Complaint itself sets up a presumption that the consumers at issue in this case are not easily confused. When coupled with the other factors and evidence discussed herein, Sugarfina fails to see how the facts relevant to this *Sleekcraft* factor are not fatal to Plaintiff's Complaint.

### g. Intent to Infringe

The seventh *Sleekcraft* factor is the defendant's intent in adopting the mark. "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354. Here, Plaintiff's allegations are, at most, that Sugarfina utilized a term that was already long in public discourse and, at some point after Sugarfina received an erroneous demand letter from Plaintiff, a fact that does little to show Sugarfina's intent at the time of adoption. The Complaint therefore likewise fails to proffer facts demonstrating the relevant intent.

### h. Likelihood That the Parties Will Expand Their Product Lines

Finally, the last *Sleekcraft* factor is the likelihood that the parties will expand their product lines. "A strong possibility that either party may expand its business to compete with the other will weigh in favor of finding infringement." *Duncan Kitchen*

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1   *Grips, Inc. v. Boston Warehouse Trading Corp.*, 2011 WL 13199150, at *5 (C.D. Cal.

2   2011) (*quoting Sleekcraft*, 599 F.2d at 354).  Mere speculation about future plans is

3   insufficient; the plaintiff must proffer concrete evidence of plans to expand into new

4   product lines. *See Surfvivor Media, Inc. v. Survivor Prod.*, 406 F.3d 625, 634 (9th Cir.

5   2005).  Here, the Complaint contains no allegations whatsoever regarding whether

6   either party intends to expand its business line, much less allegations that would rise

7   beyond the level of mere speculation.

8       Thus, Plaintiff has failed to plead facts in support of virtually any of the above

9   factors.  Moreover, for reasons discussed above, the facts included in the Complaint,

10  as well as those facts subject to judicial notice, demonstrate that consumer confusion

11  is unlikely and in fact implausible.  Accordingly, the Complaint should be dismissed

12  with prejudice.

13      **3.   Sugarfina's Use of the Term Candygram Amounts to Classic
            Fair Use, Which Independently Defeats Plaintiff's Trademark-**

14          **based Claims**

15      There are two fair use defenses available in trade dress or trademark

16  infringement cases—classic and nominative.  *See Mattel, Inc. v. Walking Mountain*

17  *Productions*, 353 F.3d 792, 809 (9th Cir. 2003) (stating that both types of fair use

18  defense are applicable in both trademark and trade dress cases).  A defendant's use is

19  classic fair use "'where [he] has used the plaintiff's mark only to describe his own

20  product, and not at all to describe the plaintiff's product.'"  *Id.* (*quoting Cairns v.*

21  *Franklin Mint*, 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis original)). Stated

22  differently, the classic fair use defense "applies when a mark is used in its primary

23  descriptive sense rather than its secondary trademark sense."  *Fleischer Studios, Inc. v.*

24  *A.V.E.L.A., Inc.*, 925 F.Supp.2d 1067, 1075 (C.D. Cal. 2012);  *see also Cairns*, 292

25  F.3d at 1150 (under the classic fair use defense, "'[a] junior user [of a trademark] is

26  always entitled to use a descriptive term in good faith in its primary, descriptive sense

27  other than as a trademark'") (quotations omitted).  A classic fair use defense applies

28  where: (1) the term in dispute is not utilized as a trademark or service mark; (2) the

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1  term has been used fairly and in good faith; and (3) the defendant has used the

2  term only to describe its own goods or services. *See Cairns*, 292 F.3d at 1151; see also 15

3  U.S.C. § 1115(b)(4) (codifying the classic fair use defense).

4      Here, even assuming that some consumers in the marketplace may have come

5  to associate some use of the term "candygram" with Plaintiff's goods or services,

6  "candygram" clearly has a known, generic meaning in the minds of consumers, as

7  amply illustrated by the numerous publicly available articles referencing such matters

8  and Sugarfina's own use of the phrase.  (*See* Section II.A., *supra*; *see also* RJN ¶ 4,

9  Ex. B.)  Here, Sugarfina's use of the term "CandyGram" is plainly used to refer to its

10  own product offerings, as amply illustrated by the repeated and consistent inclusion of

11  the phrase "by Sugarfina" in Plaintiff's own excerpted images and, therefore, the

12  classic fair use defense bars all of Plaintiff's claims.[5]

**B.  Plaintiff's Second, Third, Fifth and Eighth Claims Fail for Further Independent Reasons**

13
14
**1.  Plaintiff's Second Cause of Action for Trademark Dilution Fails Because Plaintiff Fails to Plead that its Mark is Famous**

15

16      Plaintiff's Second Cause of Action is for trademark dilution.  (Compl. ¶¶ 49-

17  60.)  A trademark dilution claim only lies as to marks that are famous.  *Theta Chi*

18  *Fraternity, Inc. v. Leland Stanford Junior University*, 212 F. Supp. 3d 816, 829 (N.D.

19  Cal. 2016) (dismissing trademark dilution claims for failure to sufficiently allege

20  marks were famous).[6]  The Ninth Circuit has concluded that trademark dilution "is a

21  cause of action reserved for a select class of marks—those marks with such powerful

22
23  _____
24  [5] Other facts also demonstrate fair use, including the fact that Sugarfina's usage is clearly made to refer to a method for delivery of its own products, as illustrated by the fact that, for example, its usage is consistently embedded with an email symbol

25  between the phrase "candygram," and sells distinctive products in trademarked candy Bento Boxes® with distinctive packaging in a distinctive light blue color scheme.

26  (*See* Section II.A, *supra*.)
[6] To prevail on a trademark dilution claim, "a plaintiff must show that (1) the mark is

27  famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use

28  of the mark is likely to cause dilution by blurring or dilution by tarnishment."  *Theta Chi Fraternity*, 212 F. Supp. 3d at 827 (citation omitted).

consumer associations that even noncompeting uses can impinge on their value." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) (citations omitted). To be famous, a "mark must be truly prominent and renowned." *Id.* at 875 (citations omitted). "[D]ilution protection [extends] only to those whose mark is a household name." *Id.* (internal quotation marks omitted). Courts have described dilution fame as "a rigorous standard," *Everest Capital Ltd. v. Everest Funds Mgmt.*, L.L.C., 393 F.3d 755, 763 (8th Cir. 2005), "a difficult and demanding requirement," *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14–cv–04050–MEJ, 2014 WL 6788310, at *20 (N.D. Cal. Dec. 2, 2014) (internal quotation marks omitted), and "difficult to prove," *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012).

Here, Plaintiff has fallen well short of this "rigorous and demanding" standard. The sum total of Plaintiff's allegations regarding the wholly-unsubstantiated "fame" of the "CANDY-GRAM" mark are a pair of equally threadbare and formulaic recitations that the mark has "become famous and distinctive." (Compl. ¶¶ 51, 53.) Courts have consistently held that complaints alleging far more than what is alleged here still fail to adequately plead a claim for trademark dilution. *See Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1066-67 (N.D. Cal. 2015) (dismissing a dilution claim despite the plaintiff's allegation that 20 million U.S. users had downloaded the plaintiff's software application);[7] *Color Me Mine Enters. Inc. v. S. States Mktg. Inc.*, No. CV 12-00860-RGK(JCx), 2012 WL 12887744, at *2 (C.D. Cal.

---

[7] *Arcsoft* is instructive. In that case, Arcsoft, sued for trademark dilution of its Perfect 365 mark. 153 F. Supp. 3d 1065. In opposing a motion to dismiss, the Plaintiff noted that the complaint stated that "over 60 million consumers have downloaded the Perfect365 App globally, that 20 million have done so nationally," that the app "counts many of the United States' and world's most famous celebrities among its dedicated users," including the Kardashians, and that the app has been featured, recognized, and/or mentioned in "many of the most famous and widely-circulated publications in the United States," including the New York Times, The Washington Post, The Huffington Post, The Daily Mail, Allure magazine, TechCrunch, PCWorld, and VentureBeat. *Id.* at 1066. The Court dismissed the trademark dilution claim, finding these allegations insufficient to meet the demanding dilution fame standard.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

May 18, 2012) (finding that allegations that the plaintiff "operate(s) 138 franchises in 28 states and 11 countries, generates over $28 million in annual sales, spends 3% of its revenue on advertising and an additional $50,000 per year on public relations, and owns a website that receives 2 million 'hits' per week" was insufficient to state a claim for federal or California trademark dilution); *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 Civ. 3599, 2013 WL 866867, at *7 (S.D.N.Y. Mar. 8, 2013) (dismissing with prejudice claim that trade dress of an exercise trampoline was famous and diluted, because even an allegation "that several hundred thousand gym-goers in the United States" used the product was "insufficient to establish that the alleged trade dress is 'widely recognized by the general consuming public of the United States,' a group that numbers well over 200 million people"); *Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 940-41 (S.D. Cal. 2013) (holding allegation that Plaintiff "was the source of over 20 million automotive replacement parts for over 40 automobile manufacturers worldwide" insufficient to state a claim for trademark dilution).  Accordingly, Plaintiff's trademark dilution claim should be dismissed.

### 2. Plaintiff's Third Cause of Action for Trade Dress Infringement Does Not Identify the Trade Dress That Defendant is Alleged to Have Infringed

Plaintiff styles its Third Cause of Action, in part, as one for "Trade Dress Infringement." (Compl. at 19.)  As noted above, this cause of action fails because Plaintiff has not adequately alleged a likelihood of confusion.  (*See* Section IV.A, *supra*.)  The Third Cause of Action also fails for the additional reason that it fails to adequately describe the allegedly infringed trade dress.

To survive a motion to dismiss, a complaint asserting a claim for trade dress must state, at a minimum, "a complete recitation of the concrete elements of [their] alleged trade dress."  *Arcsoft,* , 153 F. Supp. 3d at 1070 (granting motion to dismiss, holding that "ArcSoft must specifically identify, in its complaint, the particular aspects of the Perfect365 app that it claims amount to the protectable trade dress that

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

defendants have infringed.") (citation omitted); *see also Bryant v. Matvieshen*, 904 F. Supp. 2d 1034, 1046 (E.D. Cal. 2012) ("In order to state a trade dress claim for website design, [plaintiff] needs to clearly define the specific elements that constitute the trade dress; a general description of the site is insufficient."); *Sleep Sci. Partners v. Lieberman*, No. 09–cv–04200–CW, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010) (same); *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, No. 08–cv–04397–WHA, 2008 WL 6742224, at *5 (N.D. Cal. Dec. 18, 2008) ("[Plaintiff] must provide more detail and clarify...the trade dress at issue. The complaint does not sufficiently put [defendant] on notice of the trade dress claim alleged.").

The Complaint here, however, is utterly devoid of any such description. Indeed, the only references to "trade dress" are the mere statement of the phrase as one among many legal phrases listed in an introductory paragraph, and the inclusion of the term in the title of the Third Cause of Action.  (Compl. ¶¶ 1, 60-61.)  Plaintiff's Third Cause of Action must therefore be dismissed for this further independent reason.

### 3. Plaintiff Fails to State Facts Sufficient to Support its Fifth Cause of Action for Violations of the UCL

Plaintiff's Fifth Cause of Action is for violation of California's Unfair Competition Law.  The UCL imposes liability for an "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Here, the "unlawful" prong fails for the reasons described above in Section IV.A., *supra*.  Plaintiff likewise has not pled a claim under the "unfair" or "fraudulent" prongs of the UCL.

Here, Plaintiff has sued Sugarfina as a putative competitor, rather than as an aggrieved consumer.  Therefore, to the extent Plaintiff's UCL claims are being pursued pursuant to the "unfairness" prong of the UCL, its claims are governed by the "unfairness" standard articulated by *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999) for UCL cases between competitors, rather than the general standard applicable to consumer claims.  Under the *Cel-Tech* standard, "[w]hen a plaintiff who claims to have suffered injury from a direct competitor's

'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel–Tech*, 20 Cal.4th at 187.  Thus, Plaintiff must allege that Sugarfina's conduct "(1) violates the policy or spirit of the antitrust laws because the effect of the conduct is comparable to or the same as a violation of the antitrust laws, or (2) it otherwise significantly threatens or harms competition." *People's Choice Wireless, Inc. v. Verizon Wireless*, 131 Cal. App. 4th 656, 662 (2005) (citations omitted).  For purposes of the first prong, acts that violate the spirit of the antitrust laws include "horizontal price fixing, exclusive dealing, or monopolization." *See Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F.Supp.3d 1141, 1156 (S.D. Cal. 2014).  For purposes of the second prong, "[i]njury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws." *Cel–Tech*, 20 Cal.4th at 186.  Here, Plaintiff has not alleged *any* violation of the antitrust laws, such as "horizontal price fixing, exclusive dealing, or monopolization," and the Complaint contains no allegations of injury to competition, as opposed to injury to Global Apogee itself. Thus, the Complaint fails to allege "unfairness" under the *Cel-Tech* standard.

Plaintiff's apparent claims under the UCL's "fraudulent" prong fare no better. Courts have repeatedly held that a UCL claim based upon allegedly fraudulent statements may be dismissed where the statement, read as a whole, would not have deceived a reasonable person.  *See Freeman v. Time, Inc.,* 68 F.3d 285, 287 (9th Cir.1995) (upholding dismissal of UCL claim based upon Publisher's Clearinghouse Million Dollar Dream Sweepstakes mailers where mailers were couched in language suggesting that the plaintiff had won the sweepstakes because as a matter of law no reasonable consumer could have believed they had actually won given disclaimers elsewhere in the mailer); *Simpson v. The Kroger Corp.*, 219 Cal. App. 4th 1352, 1371 (2013) (upholding order granting demurrer to UCL claims on grounds that reasonable

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

person would not have believed that label on Challenge Spreadable Butter indicated that product only contained butter, where nearby language also noted "with Canola Oil"); *Dumas v. Diageo PLC*, 2016 WL 1367511 at *3 (S.D. Cal. Apr. 6, 2016) (rejecting claim that consumer was deceived into believing that Red Stripe beer was brewed in Jamaica because of representation that it is "Jamaican-style Lager," because bottom of packaging stated that it was brewed and bottled by the Red Stripe Beer Company in Pennsylvania).  Here, as the Complaint discloses, Sugarfina consistently included the words "by Sugarfina" immediately following, and in immediate proximity to, the word "CandyGram," and the presentation and motif was otherwise distinctive.  Thus, a reasonable person reading that text could not have thought that it would receive a "CandyGram" "by Global Apogee."

Finally, Plaintiff's UCL claims fail because Plaintiff inappropriately seeks damages, rather than restitutionary disgorgement.  "A claim under [the UCL] is 'equitable in nature; damages cannot be recovered….'"  *Forty Niner Truck Plaza, Inc. v. Shank*, No. Civ. S-11-860 FCD, 2011 WL 4386299, at *2 (E.D. Cal. Sept. 20, 2011); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003); *Inline, Inc. v. Apace Moving Systems, Inc.*, 125 Cal. App. 4th 895, 905 (2005) (holding that remedies under UCL are equitable and "designed to afford relief by requiring disgorgement of the particular property or money taken by an unfair business practice, rather than damages compensation").  In the instant case, Plaintiff specifically seeks in its UCL cause of action "monetary *damages*…including *damages and profits* in an amount not less than five million dollars ($5,000,000)…"  (Compl. ¶ 90) (emphasis added).  The UCL claim should, therefore, be dismissed.

### 4.   Plaintiff Fails to State Facts Sufficient to Support its Eighth Cause of Action for Tortious Interference with Prospective Business Relationship

Plaintiff's Eighth Cause of Action is for tortious interference with prospective business relationship.  (Compl. ¶¶ 113-124.)  Because Plaintiff has not adequately pled a plausible claim of infringement, the Eighth Cause of Action fails for the reasons set

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

forth in Section IV.A., *supra*.  Additionally, this cause of action fails for the further independent reason that "an essential element of the tort of intentional interference with prospective business advantage is the existence of a business relationship with which the tortfeasor interfered.  Although this need not be a contractual relationship, *an existing relationship is required*."  *Roth v. Rhodes*, 25 Cal. App. 4th 530, 546 (1994) (emphasis added).  Plaintiff's Complaint does not identify any "existing relationships" with which Sugarfina allegedly interfered.

# V.   <u>CONCLUSION</u>

For the foregoing reasons, Sugarfina respectfully requests that the Court enter an order dismissing the Complaint in its entirety.

Dated: July 31, 2018                    **MCDERMOTT WILL & EMERY LLP**

By:   */s/ Jason D. Strabo*
_____
JASON D. STRABO
Attorneys for Defendant
SUGARFINA, INC.