'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GLOBAL APOGEE,

        Plaintiff,

   v.

SUGARFINA, INC., et. al.,

        Defendants.

CV 18-5162-RSWL-Ex

**ORDER re: Individual Defendants' Motion to Dismiss, or in the Alternative, Motion to Strike Plaintiff's Second Amended Complaint [60]**

    Plaintiff Global Apogee ("Plaintiff") filed this Action [1] on June 11, 2018 against Defendants Sugarfina, Inc. ("Sugarfina"), Joshua Resnick, and Rosie O'Neill alleging trademark infringement among other related claims.  The Action arises out of Defendants' purported unauthorized use of Plaintiff's federally registered CANDY-GRAM service mark.

    Before this Court is a Motion to Strike, or in the alternative, Motion to Dismiss Plaintiff's Second

1

1  Amended Complaint [60] filed by Defendants Joshua
2  Resnick and Rosie O'Neill ("Individual Defendants").
3  For the following reasons, this Court **DENIES as moot**
4  Individual Defendants' Motion to Strike and **DENIES** the
5  Motion to Dismiss.

6                    **I.   BACKGROUND**

7      Plaintiff alleges that Sugarfina infringed on its
8  federally registered CANDY-GRAM trademark.  Plaintiff's
9  Second Amended Compl. ("SAC") ¶ 32, ECF No. 57.
10  Plaintiff further alleges that Individual Defendants,
11  who serve as co-founders and co-CEOs of Sugarfina, were
12  personally and directly involved in each of the
13  decisions regarding the infringing uses of the CANDY-
14  GRAM name by controlling and directing Sugarfina's
15  activities through its executives, representatives, and
16  agents.[1]  SAC ¶ 32.

17      Plaintiff filed its Complaint [1] against Sugarfina
18  and Individual Defendants on June 11, 2018, asserting
19  claims related to Defendants' allegedly unauthorized use
20  and infringement of Plaintiff's federally registered

21  _____

22      [1] As support, Plaintiff points to a December 22, 2017
    interview where Defendant O'Neill described her typical workday,
    which included tasks such as: leading team meetings, reviewing
23  new store designs, creating marketing campaigns for product
    launches, and coming up with product concepts for brand
24  collaborations.  Id. ¶ 33.  Defendant O'Neill also described the
    division of labor between the Individual Defendants in her
25  interview: Defendant Resnick handles the "back-of-house"
    operations, finance, human resources, and business development;
26  and Defendant O'Neill manages the "front-of-house," which
    includes "everything that is visible to [their] customers."  Id.
27  Defendant O'Neill admitted in her interview that she "still does
    a lot of the design work [her]self" even after hiring personnel.
28  Id.

                            2

CANDY-GRAM trademark and its common law rights to the
CANDY-GRAM service mark.

On October 10, 2018, the Court granted in part [15]
Sugarfina's Motion to Dismiss [9] with twenty-one days'
leave to amend.  On October 18, 2018, the Court entered
Plaintiff and Sugarfina's Joint Stipulation [16], which,
among other things, extended Plaintiff's deadline to
file an amended complaint to November 1, 2018.

On November 1, 2018, Plaintiff filed its First
Amended Complaint ("FAC") [18], alleging five causes of
action: (1) federal trademark infringement in violation
of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (2)
California common law unfair competition; (3) unfair
competition in violation of California Business and
Professions Code § 17200; (4) common law infringement of
trademark; and (5) common law infringement of service
mark.  On November 21, 2018, Sugarfina filed its Answer
and Counterclaims against Plaintiff [20].

Sugarfina filed a Notice of Filing Bankruptcy on
September 16, 2019 [37].  On April 14, 2020, the Court
stayed this Action [42] pending the Confirmation Hearing
in Sugarfina's bankruptcy proceedings.  On May 13, 2020,
the U.S. Bankruptcy Court for the District of Delaware
entered an order confirming Sugarfina's Plan of
Reorganization, which became effective May 28, 2020.
See Update re: Status and Result of Bankruptcy Ct. Hr'g,
ECF No. 43; Supp. Notice re: Status and Result of
Bankruptcy Ct. Hr'g, ECF No. 44.

1    On September 8, 2020, the Court granted [48]
2    Sugarfina's unopposed Motion to Enforce Plan Injunction
3    and Release Provisions [45], ordering Plaintiff to
4    dismiss its claims against Sugarfina and staying the
5    Action against Individual Defendants through May 28,
6    2021.  On June 15, 2021, the Court dismissed Sugarfina
7    and Sugarfina's Counterclaims against Plaintiff without
8    prejudice [55].
9    Individual Defendants filed a Motion to Dismiss
10   Plaintiff's First Amended Complaint [56] on June 18,
11   2021.[2]  Plaintiff filed a Second Amended Complaint
12   ("SAC") [57] and Opposition [58] on June 29, 2021, and
13   Individual Defendants filed their Reply [59] on July 6,
14   2021.  On July 23, 2021, this Court denied [63]
15   Individual Defendants' Motion as moot and deemed the
16   Plaintiff's SAC the operative complaint in this Action.
17   Individual Defendants filed the instant Motion to
18   Dismiss, or in the Alternative, Motion to Strike
19   Plaintiff's SAC [60] on July 13, 2021.  Plaintiff
20   opposed [62] the Motion on July 20, 2021, and Individual
21   Defendants replied [64] on July 27, 2021.
22   ///

23

24         [2] Pursuant to the Court's April 14, 2020 Order, Individual
25   Defendants accepted service of the summons and complaint
     effective as of the date the Court lifted the stay, with their
     response deadlines set for twenty-one days thereafter.  See Order
26   Granting Joint Stipulation to Continue Trial Date and Pretrial
     Dates ¶ 4, ECF No. 42.  The Action was stayed against Individual
27   Defendants through May 28, 2021, and accordingly their deadline
28   to respond was June 18, 2021.

1          **II. DISCUSSION**

2     **A.   <u>Motion to Strike Plaintiff's SAC</u>**

3          Individual Defendants' Motion to Strike the SAC for

4    being improperly filed is denied as moot because the

5    issue has already been addressed.  On July 23, 2021,

6    this Court denied Individual Defendants' Motion to

7    Dismiss the FAC [56] and deemed the SAC the operative

8    Complaint in this Action.  <u>See generally</u> Order re:

9    Individual Defs.' Mot. to Dismiss FAC ("Order"), ECF No.

10   63.[3]  Consequently, the Court need not consider either

11   party's arguments as to whether the SAC was properly

12   filed under Rules 15 and 16.

13    **B.   <u>Motion to Dismiss Plaintiff's SAC</u>**

14         Federal Rule of Civil Procedure ("Rule") 12(b)(6)

15   allows a party to move for dismissal on one or more

16   claims if a pleading fails to state a claim upon which

17   relief can be granted.  Under Rule 8(a), a complaint

18   must contain "a short and plain statement of the claim

19   showing that the pleader is entitled to relief" to give

20   the defendant "fair notice of what the . . . claim is

21   and the grounds upon which it rests." <u>Bell Atl. Corp.

22   v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> Fed. R.

23   Civ. P. 8(a).  Dismissal is proper "where the complaint

24   lacks a cognizable legal theory or sufficient facts to

25   _____

26         [3] Individual Defendants' instant Motion offers the same
     "procedurally defective" argument that was already analyzed and
27   rejected in the Order [63].  As the Court noted there, requiring
     Plaintiff to file a formal motion and refile the SAC would make
28   "little practical sense and waste resources."  Order 11:19-21.

support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). While a complaint need not contain detailed factual allegations, it must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. The plaintiff must allege enough facts "to raise a right to relief above the speculative level." Id. In evaluating a Rule 12(b)(6) motion, a court must take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the nonmovant. Great Minds v. Off. Depot, Inc., 945 F.3d 1106, 1109 (9th Cir. 2019). A court may generally consider only "the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice." In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014).

As a threshold matter, Plaintiff contends that Individual Defendants waived the right to move to dismiss, pursuant to Rule 12(g)(2), by failing to timely bring a Rule 12(b)(6) motion against the Original

1   Complaint.  Mot. 11:8-9.  The Court disagrees.

2       As the Court previously addressed in the Order, the
3   parties had stipulated that Individual Defendants only
4   accepted service as of May 28, 2021.  See Order 6:8-27
5   (referencing the parties' Joint Stipulation [40] entered
6   on April 9, 2020).  The Court gave Individual Defendants
7   twenty-one days to respond from that date, and
8   Individual Defendants timely filed a Motion to Dismiss
9   FAC [56] on June 18, 2021.  Moreover, Individual
10  Defendants have not waived their right to bring this
11  Motion because defendants do not have to respond to a
12  pleading until they have been properly served.  Fed. R.
13  Civ. P. 12(a)(1)(A).  Therefore, Individual Defendants'
14  Motion to Dismiss ("Motion") is procedurally proper.

15      Individual Defendants move to dismiss the SAC with
16  prejudice for two reasons: (1) the SAC fails to state a
17  claim against Defendants as required by Rule 12(b)(6);
18  and (2) amendment would be futile because the only facts
19  that can be offered are in the SAC, and they are plainly
20  insufficient.  See generally Mot.  Individual Defendants
21  move to dismiss all of Plaintiff's claims: (1) federal
22  trademark infringement in violation of Section 32 of the
23  Lanham Act, 15 U.S.C. § 1114; (2) California common law
24  unfair competition; (3) unfair competition in violation
25  of California Business and Professional Code § 17200;
26  (4) common law infringement of trademark; and (5) common
27  law infringement of service mark.  Mot. 7:3-8; see
28  generally SAC.

1                 *1. Individual Liability for Federal*
2                      *Trademark Infringement*
3        Individual Defendants move to dismiss Plaintiff's
4   first cause of action for failure to state a claim upon
5   which relief may be granted.  First, Individual
6   Defendants argue that it is not sufficient to plead
7   trademark infringement against the officers and
8   directors of an allegedly infringing corporation based
9   solely upon [their] status as officers and directors.
10  Mot. 1:19-24.
11       Corporate officers and directors that personally
12  authorize, direct, or are otherwise directly involved in
13  a company's infringing conduct may be individually
14  liable for the company's trademark infringement.  <u>Comm.</u>
15  <u>for Idaho's High Desert, Inc. v. Yost</u>, 92 F.3d 814, 823
16  (9th Cir. 1996); <u>see also</u> Transgo, Inc. v. Ajac
17  Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir.
18  1985) ("The officer must personally take part in
19  infringing activities or specifically direct employees
20  to do so.").
21       Corporate officers are "personally liable for a
22  corporation's trademark infringements when they are a
23  'moving, active conscious force' behind the
24  corporation's infringement."  <u>Talent Mobile Dev., Inc.</u>
25  <u>v. Headios Grp.</u>, 382 F. Supp. 3d 953 (C.D. Cal. 2019)
26  (quoting <u>Daimler AG v. A-Z Wheels LLC</u>, 334 F. Supp. 3d
27  1087, 1006 (S.D. Cal. 2018)).  Showing that the
28  individual generally controls the company's business

1    affairs is insufficient to allege personal liability.
2    See, e.g., 19 Tao Vega LLC v. Holo Ltd., No. C 19-5640
3    SBA, 2019 WL 8263434, at *4 (N.D. Cal. 2019) (requiring
4    that the officer personally participate in the
5    infringement); Facebook, Inc. v. Power Ventures, Inc.,
6    844 F.3d 1058, 1069 (9th Cir. 2016) ("Cases finding
7    'personal liability on the part of corporate officers
8    have typically involved instances where the defendant
9    was the "guiding spirit" behind the wrongful conduct, or
10   the "central figure" in the challenged corporate
11   activity.'").
12       As a threshold matter, Individual Defendants
13   incorrectly relied on authority from Lauter and Deckers
14   in their Motion and Reply.  The courts in Lauter and
15   Deckers analyzed individual liability under an alter ego
16   theory, which requires a higher pleading standard.[4]  See
17   generally Lauter v. Rosenblatt, No. CV 15-08481, 2017 WL
18   6205784 (C.D. Cal. 2017) (dismissing plaintiffs' claims
19   because they could not allege enough facts to satisfy
20   the elements of an alter ego theory); Deckers Outdoor
21   Corp. v. Bright Trading Corp., No. CV14-00198, 2014 WL
22   12564124 (C.D. Cal. 2014)(same).  By contrast, while
23

24       [4] "The alter ego doctrine arises when a plaintiff [claims]
25   that an opposing party is using the corporate form unjustly and
     in derogation of the plaintiff's interests.  In certain
26   circumstances the court will disregard the corporate entity and
     will hold the individual shareholders liable for the actions of
27   the corporation."  Lauter v. Rosenblatt, No. CV 15-08481, 2017 WL
     6205784, at *7 (citing Nielson v. Union Bank of Cal., 290 F.
28   Supp. 2d 1101, 1115 (C.D. Cal. 2003)).

9

1  personal liability for trademark infringement is also at
2  issue here, there is no allegation that Individual
3  Defendants, in their capacities as officers, acted as
4  "alter egos" to Sugarfina.  Therefore, the standard
5  under Lauter and Deckers does not apply to support
6  Individual Defendants' arguments.
7      Although the two theories are similar, there is a
8  significant difference: proving liability under the
9  alter ego doctrine requires a showing that the
10  individual pierced the corporate veil, which is not
11  necessary when proving liability to hold corporate
12  officers personally liable for a corporation's trademark
13  infringements.  Compare Babbit Elecs., Inc. v. Dynascan
14  Corp., 38 F.3d 1161, 1184 (11th Cir. 1994)("[A]
15  corporate officer who directs, controls, ratifies,
16  participates in, or is the moving force behind the
17  infringing activity, is personally liable for such
18  infringement *without regard to piercing of the corporate*
19  *veil*.")(emphasis added), with Nielson v. Union Bank of
20  Cal., 290 F. Supp. 2d 1101, 1115 (C.D. Cal. 2003)("The
21  alter ego doctrine arises when a plaintiff [alleges]
22  that an opposing party is using the corporate form
23  unjustly . . . [sometimes] the court will disregard the
24  corporate entity and will hold the individual
25  shareholders liable for the actions of the
26  corporation.").  Consequently, Defendants' comparisons
27  to cases using the alter ego standard are unpersuasive.
28      Individual Defendants rely on Apple Hill Growers,

where a court dismissed a plaintiff's complaint because
it merely included a "conclusory statement that
Defendants . . . undert[ook] to control and direct the
infringing activities of [their company] by virtue of
their roles as corporate officers and owners." <u>Apple
Hill Growers v. El Dorado Orchards</u>, No. 2:17-cv-02085-
TLN-CKD, 2019 WL 5827365, at *3 (E.D. Cal. 2019)(holding
that defendants' personal involvement in the purported
trademark infringement was insufficiently alleged).
There, the plaintiff contended that it was "reasonable
to infer" that defendants, simply by virtue of their
roles, controlled and directed their company's allegedly
infringing activities with no additional facts about any
specific actions taken. <u>Id.</u>  Although <u>Apple Hill
Growers</u> discusses the relevant standard for officer
liability, it is nevertheless distinguishable on the
facts.

Here, Plaintiff does not merely rely on Individual
Defendants' roles as corporate officers of Sugarfina in
alleging their liability for trademark infringement.  In
its SAC, Plaintiff alleges that Individual Defendants
took specific actions related to trademark infringement:

> Defendants personally assisted in the development
> of every aspect of Sugarfina . . . Defendant
> O'Neill stated [in an interview] that 'her typical
> workday [is filled] with [team meetings].'
> [Defendant O'Neill] also stated that . . . she
> 'still does a lot of the design work herself . . .
> [she] handle[s] . . . product, packaging, branding,
> marketing, sales, retail stores and the website.

[Individual Defendant] Resnick handles operations, finance, human resources, business development and legal.'  Defendants also had control of . . . and appointed personnel to run Sugarfina.[5]

SAC at 13:16-14:10.

Unlike the plaintiff in <u>Apple Hill Growers</u>, here, Plaintiff offers sufficient facts to support Individual Defendants' personal involvement in the alleged infringement without relying solely on their roles as co-CEOs of Sugarfina.  Plaintiff points to Defendant O'Neill's detailed statements regarding her and Defendant Resnick's involvement in the daily activities and decision-making of Sugarfina; for example, it may be reasonably inferred from Defendant O'Neill's purported control over Sugarfina's website, product design, and retail stores that she was personally involved in the alleged infringing conduct of Sugarfina.  <u>See</u> SAC ¶¶ 24-26 (describing Sugarfina's advertisement of the "CANDY-GRAM" trade name as a product on its website and on retail store kiosks).

Because Individual Defendants allegedly hired personnel, participated in team meetings with personnel, and continue to handle design work or manage daily operations, it is plausible that the Individual

---

[5] Plaintiff cited direct quotes from Individual Defendant O'Neill's interview with Forbes magazine.  Elena Lyn Gross, <u>How Sugarfina's Founders Built A Million-Dollar (And Very Instagrammable) Candy Company</u>, FORBES (Dec. 22, 2017), <u>https://www.forbes.com/sites/elanagross/2017/12/22/how-sugarfinas-founders-built-a-million-dollar-and-very-instagrammable-candy-boutique/?sh=314f244d457a</u>.

Defendants could have been the "guiding spirits" behind the allegedly infringing conduct, either by personally taking part in it or directing their employees to do so. The SAC alleges specified roles that go beyond asserting that Individual Defendants only had general control over Sugarfina, and it is therefore sufficient to survive a motion to dismiss.  Cf. Bravado Int'l Grp. Merch. Servs., Inc. v. Gearlaunch, Inc., No. CV-16-8657-MWF (CWx), 2018 WL 6074553, at *1-2 (C.D. Cal May 1, 2018) (denying motion to dismiss trademark infringement claims where plaintiff alleged that defendants were in charge of inspecting products and printing operations, publicly commented on lawsuits on behalf of the company, and oversaw infringement procedures yet failed to take action against alleged infringement).

Furthermore, Individual Defendants' argument (relying on the outcome of Transgo) that Plaintiff is not sufficiently specific about Individual Defendants' particular roles in the infringement is refuted by the Bravado court:

> [T]he Court notes that both *Townsley* and *Transgo* were decided on full evidentiary records, not motions to dismiss.  Therefore, the courts in those cases were able to point to specific pieces of evidence that supported personal liability.  At this stage of the proceedings, although it may be a "close" call . . . Plaintiffs have alleged enough to withstand a motion to dismiss.  As discussed at the hearing, discovery will reveal the true extent of [Defendant]'s role in the allegedly

1    infringing conduct.

2    Id. at *4.  Here, Plaintiff has alleged enough to

3    withstand a motion to dismiss, and the details behind

4    Individual Defendants' specified roles may be revealed

5    through discovery.

6         In sum, given that the facts have risen above a

7    speculative level, the SAC's first cause of action

8    survives dismissal.

9              2. *California Common Law Unfair*

10                *Competition, Common Law Trademark*

11                *Infringement, and Common Law Service Mark*

12                *Infringement*

13        Plaintiff has sufficiently alleged trademark

14   infringement under the Lanham Act; consequently,

15   Plaintiff has also sufficiently alleged its second claim

16   for California common law unfair competition, fourth

17   claim for common law trademark infringement, and fifth

18   claim for common law service mark infringement.

19        "[F]ederal and state laws regarding trademarks and

20   related claims of unfair competition are substantially

21   congruent."  Int'l Order of Job's Daughters v. Lindeburg

22   & Co., 633 F.2d 912, 916 (9th Cir. 1980); see also Grey

23   v. Campbell Soup Co., 650 F. Supp. 1166, 1173 (C.D. Cal.

24   1986)("[T]he tests for infringement of a federally

25   registered mark under § 32(1), 15 U.S.C. § 1114(1),

26   infringement of a common law trademark, unfair

27   competition under § 43(a), 15 U.S.C. § 1125(a), and

28

1    common law unfair competition involving trademarks are
2    the same."). Because these claims are congruent with
3    trademark infringement, they are not dismissed.

4              3. *Unfair Competition in Violation of*
5                 *California Business and Professional Code §*
6                 *17200*

7        Individual Defendants assert that Plaintiff's third
8    cause of action for violation of California's UCL Unfair
9    Competition Law ("UCL") should also be dismissed under
10   Rule 12(b)(6). Mot. 10:20-23. Individual Defendants
11   offer two reasons: (1) Plaintiff fails to plead any
12   sufficient facts with reasonable particularity for
13   alleged unlawful, unfair, or fraudulent conduct in
14   violation of the UCL; and (2) because Plaintiff's
15   substantive causes of action fail, Plaintiff's UCL claim
16   based upon those causes of action must fail as well.
17   See Mot. 11:19-23, 12:1-11. Both are unavailing.

18       The UCL imposes liability for an "unlawful, unfair
19   or fraudulent business act or practice . . . ." Cal.
20   Bus. & Prof. Code § 17200. An action for unfair
21   competition under the UCL is "substantially congruent"
22   to a trademark infringement claim under the Lanham Act.
23   Acad. of Motion Picture Arts & Scis. v. Creative House
24   Promotions, Inc., 944 F.2d 1446, 1457 (9th Cir. 1991).
25   "Under both [the UCL and the Lanham Act], the 'ultimate
26   test' is 'whether the public is likely to be deceived or
27   confused by the similarity of the marks.'" Id.
28   (citations omitted).

Plaintiff has alleged a UCL violation based on the same elements required for its trademark infringement claim. <u>See</u> SAC ¶¶ 65, 67 ("Defendants' unfair competition includes . . . representing in advertising and marketing materials . . . that CANDY-GRAM is owned or controlled by Defendants, *causing confusion among dealers and consumers* . . . [this conduct] constitutes unlawful, unfair, and fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200."). (emphasis added). Because Plaintiff's other substantive claims survive dismissal, Plaintiff's UCL claim based upon those causes of action similarly survives dismissal.

### III. CONCLUSION

Based on the foregoing, the Court **DENIES as moot** Individual Defendants' Motion to Strike and **DENIES** the Motion to Dismiss.

**IT IS SO ORDERED.**

DATED: October 15, 2021

/s/ Ronald S.W. Lew
_____
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge